This case is 25-1078 Ward v. National Credit Systems. Mr. Bodich. Good morning, Justice. May it please the Court. On behalf of National Credit Systems, I'm John Bodich. I'll frequently refer to National Credit Systems as just NCS. I do believe that NCS's reply brief supplies sort of the authority and reasoning why the framework advocated by Mr. Ward, the appellee, is neither supported by the FCRA nor the circuit courts that have tackled this issue, which is, you know, when you have to determine the obligations of the CRAs and data furnishers such as NCS upon receipt of an indirect dispute, that is a dispute that went to the CRAs and then is forwarded to the data furnisher. But if you've got any questions about that framework, I'm happy to explain with additional argument. The first point I want to stress is the lower court's primary error, which is the trial court failed to find that Mr. Ward's dispute was not an actionable inaccuracy. And the first question there is, who determines whether or not a particular dispute is an actionable inaccuracy? And that's where the appellee's argument is particularly flawed, is they rely on the jury's determination. They made it a fact question when it's a court that must decide whether or not a claim is actionable. Examples being like Article III standing or a court that's got to determine sovereign immunity before a government tort claim. So that being a question of law, that was the lower court's error that we primarily want to stress today, which is they had the opportunity at the summary judgment stage, the pretrial stage, we even argued it at the motion to eliminate stage, and then again, of course, at the 50A motion and 50B motion. All being the same thing, the trial court is the one that had to decide whether or not this was an actionable inaccuracy. Counsel, help me with this. In terms of this actionable inaccuracy, you say we should apply the standard of objectively and readily verifiable? Correct. Okay. Tell me about the odyssey of that standard. It starts when the furnisher sends the matter to the CRA, right? It has to comply with that standard of objectively and readily verifiable. In order to send it properly to the, excuse me, to send it initially, the collection issue, notice to the CRA, right? So going from the debtor or the consumer to the CRA, CRA to the data furnisher, and it's whether or not the data furnisher has an obligation to perform a reasonable investigation, all depends on whether or not it's a dispute that's capable. Okay. Go ahead. Right. Here's the odyssey I want you to trace for me. You have the furnisher supplying the information to the CRA about a debt, and then you have a dispute that goes to the CRA, and they send it back to the furnisher. And then the furnisher has to look into it as an investigation, right? Correct. Okay. Does the standard of objectively and readily verifiable apply from the initial furnisher sending it as a collection matter, notification of a collection matter to the CRA, through the whole investigation process? Does that standard apply? And if I understand your question, at the outset, before there's any dispute, when the data furnisher is supplying the information to the CRAs, to the consumer reporting agencies? Through the whole odyssey of this thing, from the furnishing of the collection matter to the CRA, through the reasonable investigation that your client had to make after the dispute was registered? That standard? Do you apply that same standard throughout this whole odyssey? No, I wouldn't say that's accurate. That standard applies once there's a dispute being made, because then that's the standard that applies whether or not it's an actual inaccuracy. All right. So when the dispute is made, that standard does apply? That's when it should apply, yes. All right. And that's at the same time where it's generated the need for a reasonable investigation, right? If it is an actionable inaccuracy, yes. Well, but you judge whether it's an actual inaccuracy by all the things that come in from the disputant. Correct. Which, in this case, went through July 2020, correct? I know it's that summer, yes, if that's the correct year. So that sounds to me like you're saying, in effect, the standard of objectively and readily verifiable applies from the beginning of the problem through the reasonable investigation. In your example, yes. Correct. Because that's how you're going to determine whether or not you have the information to know whether it's capable of being verified. So everything that the disputant submits in the dispute, and I think it goes up through July 2020, your client was required to look at it under this standard. Correct. And I take it that what their judgment was is that this was either a father assisting a daughter or a father who's unwilling to turn on her. Correct. And that's why under, whether you use the standard that's just been developed in the last three, four years, by the second, fourth, fifth, and eleventh, or you use the standard that had been applied by almost all the remaining circuits before, it's the same result. But in the closing argument, in the opening, you talked about the conspiracy, that he was an active participant. And in closing, gears were switched. And you went to, no, he didn't want to rat on his daughter. That was my reading of the opening and closing. Is that correct? Not far off. And part of that was because of the court's unwillingness to perform the function it's required to, as well as the instructions that she wouldn't give. And so certainly our strategy had to change during the trial. But it doesn't change what the standard should be or how it should be applied. Okay. What's the, so there's a, again, going back to Judge Murphy's odyssey, there's been a complaint by a consumer of inaccurate data. And then that triggers a duty under the statute by your client to conduct a reasonable investigation of those allegations, right? If it is an actionable inaccuracy, yes. Okay. And what is an actionable inaccuracy? Think of it as one that's What should it be under Tenth Circuit law? Sure, and that's where the standard comes in. If it's capable of being decided by objective facts and documents, then you can decide it. And it is an actionable inaccuracy. And if it's not, there's no duty for a reasonable investigation. You don't even get to that point.  So under your view, could a furnisher just choose not to believe affidavits of identity theft basically at any time? And just say, gosh, I can't, this could be untruthful or conspiratorial. So I can't go there. If it relies just on the veracity of the consumer, then in that situation, yes. But you're going to still have to look at the totality of the circumstances. What documents and information are available to you? So if you go to like a typical identity theft, you're going to have that, right? Which is typically whether by a police report or identity theft, you're going to have some testimony or protestation from the consumer that this was identity theft. But in normal identity theft cases, there are certain markers that are objectively and readily verifiable, such as a mismatched ID, a mismatched signature, no connection at all between the consumer, the victim, and whoever some unknown third party who, you know, obtained the debt or the services, right? And so normally on an identity theft case, there are markers you can find, and they absolutely are objectively and readily verifiable. So that even though it also relies on a statement that, hey, this is identity theft and it's not mine, the other circumstances around it show that it is objectively and readily verifiable. This case is just the atypical identity fraud case, right? Which is, you've got family fraud involved, you've got even in his own sort of- Let me ask you this. If, on a hypothetical, if Mr. Ward said it was identity theft, and even he could believe it was a theft, albeit by his daughter, would the investigation have gone differently if he had said, my daughter stole my ID, and that's how this happened? Would the investigation, should it have gone differently there? Well, I would say in the situation that did play out, this is an easy case to reverse and render. In the situation that you've presented, it does get into more of a gray area that would be more difficult, yes. It still, in that case, would- If that's all you have is just the statement you said, then it is relying on his credibility, and that would be an inactionable- That would not be an actionable inaccuracy. But if there were other circumstances around it that supported objectively his statement that, my daughter just stole my ID, here's how it happened- What about pay stubs from Neiman Marcus with his name? And I definitely- Her own one. And I appreciate that question, Justice Murphy, because that's where the sides particularly differ. The question has got to be, did Mr. Ward give a copy of his Colorado driver's license to his daughter to assist her in getting an apartment? All this, what they call the overwhelming corroborating evidence, none of it corroborates whether or not he gave his ID to his daughter to help her get a house. None of it does. All those other things just show that they were part of the fraudulent scheme. The Neiman Marcus pay stub, the fact that he lives in Colorado, all those different things that they claim are corroborating evidence, none of it bears on the question of what was the purpose he gave his ID to his daughter. And the fact that he didn't, like Mr. Murphy said, the fact that he didn't cop to the fact that she was the one in the apartment, which was glaringly clear from the lease application and his own admissions, that it was her telephone number as the contact telephone number, and the fact that they had matching IDs- When Mr. Ward disputed the report, did NCS call him and ask him about it? No, and that's- I mean, why wouldn't your client pick up the phone and call Mr. Ward, and if they suspected that Mr. Ward's daughter was involved, why didn't they pick up the phone and call her? And that seems like an objective, that would objectively and readily verify the information, and you still have your credibility defense, I suppose, but- In that situation, if they had done both of those things, it still just relies on the veracity of their statements. There's no objective evidence there. It's just her supporting his story, perhaps, right? It's a statement against interest. It would be. She's admitting to a crime. And, of course, and this played out, like during discovery, we tried to get her testimony. I mean, there was an entirely different proceeding in Texas to try to get it. She was actually ordered to testify in Texas, violated that court order, and refused to ever testify. And so that did happen, but not until the discovery phase of the lawsuit, which is another reason why this one couldn't be an actionable inaccuracy. If it takes the type of investigation that you're talking about, where you're going and you're interviewing witnesses, right, that falls directly under Robertson Holden. That's not a case that would be an actionable inaccuracy. Well, if they'd call her and she might say, yeah, I did it to help my lease application, then you could say that Mr. Wood was no longer blameworthy. That would have resolved it in one direction, yes, certainly. I did want to try to reserve some time. Although I'm about out of time. Let me use up your time for you. One of your positions is it's the obligation of the district court to require the showing of a case up front. They need to do that. Is that 12B6 stuff? Certainly. Is that how you get at it? So if it was on the pleading stage, and obviously it's at one standard, but the court can do it at the pleading stage at 12B6? This is a court who is dealing with all kinds of different things. You know, statutes like we were dealing with in the previous case. It's incumbent upon the lawyers to say, okay, they need to establish a prima facie case. Now, do you do that at 12B6? That would be the first opportunity for the defendant to bring it to the court. Did you do that in this case? No, they waited and did it at the MSJ stage, which is when I think it would normally happen. But it can, if it's clear by the pleadings. So when did they raise it for the first time, the prima facie case requirement? At the MSJ stage. And at that point, they were arguing the objective and readily verifiable standard hadn't been developed at that time, so they were using the old standard, which was factual versus legal. It was very clear from the summary judgment papers that NCS was saying, they need to establish a prima facie case, and they haven't done so. By claiming that this was a legal dispute, that's precisely what they were doing. All right. Let's hear from Mr. Ward. Good morning, Your Honors. Matt Osborne for Robin Ward. There's three important points that I want to make. Number one, the text of the FCRA in 1681 S2P says, a furnisher shall investigate upon receiving notice from a credit bureau, and there's no exceptions to that. NCS is essentially asking the court to write an exception into the statute that says you don't have to investigate unless it's readily and objectively verifiable. There are quite a few other circuits that require precisely that, don't they? The ninth, fourth, first, and eleventh? They have adopted that standard, but I don't know that they've gone that far to say you don't have to investigate at all. I think it turned more on the fact that all of those cases involved legal disputes. For example, the 11th Circuit Holden case, none of those cases are identity theft. So Holden was a case where a person admitted they bought a timeshare, and they presented legal defenses why they didn't know the money. It wasn't available as often as I wanted. Or you look at the Wright case from the 10th Circuit where the person admits, yes, my business owed the money, but I don't personally owe it, and the credit bureau should have hired a tax professional expert as part of their investigation. So I think Judge Babcock, in his summary judgment order, got it right. He said the way that you look at this is, is this legal? Are you making a legal defense or are you making a factual defense? Here, there is no unresolved legal question to resolve. Everybody agrees if you're a victim of fraud, you don't owe the money. So it's really a simple question as did this person sign the lease or authorize to sign the lease, which are fundamentally factual questions. I do also want to point out that- Well, before you move on, you wanted to focus on the investigation. Now what NCS says is that all these things you list that the investigation should have indicated that there were real problems with this, and they better back off. You mentioned the pay stubs at Neiman Marcus, the Social Security letter, the IP address, gender, etc. That whole list. But all of that is dependent on the credibility of Mr. Ward as to, you know, his daughter being involved. Was he in cahoots with her or was he an unknowing victim of her? And that never happens. Your client never put forward anything to help our man. How do I deal with that? So as a preliminary matter, he did not know it was the daughter until we got into discovery. We actually found out literally the last day of discovery. Wait a minute. The Neiman Marcus stuff, that didn't tip him off that this was his daughter? He knew that the tenant- didn't he know that the tenant was a female? He didn't know that. They knew that. They knew that? Okay. He knew that the phone number that was used was not his, but the emergency number was hers. He knew that, didn't he? He found that out after the lawsuit was filed. He didn't have access to this information. He didn't have access to the application? It's in the application, I believe. I don't believe that he did, because I recall we had to subpoena the apartment to get it. So they had provided him some information over the phone, but he didn't have all of this information. Well, okay. So you're saying he had the phone information. I don't believe that he- I'm pretty sure that the record indicates that he was given access to the application, and just assume he did, and that indicated the phone number was the number of his daughter. Well, talk about red flags. Isn't that a red flag for him? If that was the case, then yes. But he wasn't- Did the landlord sue him in Texas and get a judgment? They got a- it was never served on him, but yes, they got a no answer default judgment. But I think one of the most important points was, as Judge Babcock- Before you go there, though, if it turns out, as I believe it is, that during the dispute stage, he had access to the application or at least knew that the emergency phone number was his daughter's, then does that doom your case? I don't believe so, Your Honor, because he gave them a lot of information that would show that it was verifiable that it was fraud. I think, first of all- Well, but wait a minute. Okay. Under my hypothetical, he knows his daughter's involved in this. And part of his submission on the dispute, he needs to come forward, doesn't he, and say, well, she had my driver's license and everything because of this desire to apply for life- to make me a beneficiary of her life insurance. But I wasn't involved in it. She just- she stole my stuff. Wasn't he obligated to do that? If he knew that it was her the whole time, that would certainly go into reasonableness. I don't- And he would know that if he knew that the emergency number on the application was her phone number. Well, the testimony was that he- she had told him that she was also a victim of fraud, so he thought that she was also defrauded in some way. And this came out before trial? This came out during the trial as part of his testimony. We're talking about the reasonable investigation stage. So assume that he did know that was her emergency number. Doesn't he- isn't he obligated as part of his dispute to say, oh, my gosh, that's my daughter. She stole my ID. If the facts were that he knew it was her, then he should have said that. I don't think the facts show that he knew it was her. As Judge Babcock found in this MSJ order, they never considered that the daughter was involved during the investigation. That was a litigation position that they came up with after the case was filed. Well, it's not something they came up with. It was the truth, right? Sure, but I mean that they were not considering that as part of their investigation. So their investigation was they went back to- I thought I saw some information that during the investigation that they- that's exactly what they suspected. I don't believe so, Your Honor. I think there was no evidence of that because we have their notes and it shows what they did. There's no mention of the daughter at all. I don't want to consume all your time on this. There's a recent case out of the 11th Circuit, Raza versus Bank of America. Are you familiar with that one? And that involved, I think, identity theft, an allegation of fraud. But the court there found that because the court said that the furnisher did not have to take the complainant at his word because that would generate a credibility termination that was not readily and objectively verifiable. Yes. Doesn't that establish a pretty decent precedent that might help the position they're taking? And how would you read about it? Well, I am familiar with the case, Your Honor. In that case, that was the only evidence they had. It was actually the consumer did open the credit card, but they alleged that there was fraudulent purchases. And the bank determined that those purchases were made in person, chip to chip, and that the chip couldn't be duplicated. And they asked the consumer, have you lost your credit card? And they said, no, it's been in my possession. Consumer provided no other evidence, such as whereabouts that day or anything. So literally, all they had was the consumer's word. Here, they had so much more than his word. They had pay stubs of his real employer. He gave him his employer's name so you can call him. But that doesn't negate the fact that his daughter is using this information, and he knows it. Well, he didn't know it then. He certainly never authorized her to do it. The factual record shows this is not an atypical situation. Their own expert admitted that what's called friendly fraud, which is often family members, business partners, spouses, that happens all the time. And it's probably 25%, 30% of the fraud out there. And the banks and everybody still considers it to be fraud. At what point did he deny that he'd ever, if I remember correctly, didn't he deny that his driver's license and Social Security card had never been outside of his possession? I don't recall that. I recall him stating that his daughter had told him she needed his license to add him to her life insurance. And when did that come out? It was at trial, because they didn't take his deposition. There was no deposition of Mr. Ward? That's correct. Or the daughter? That's correct. I think the other thing that's important is the Eleventh Circuit's opinion in Hinkle v. Midland. It talks about how when you get noticed that somebody's disputing as a data furnisher, you have three choices. You can either verify and say, yes, this is correct. Or you can respond and say the consumer's correct and it needs to be changed. Or you can say we can't verify. And the Eleventh Circuit said if you say we can't verify, it's a safe harbor. You can't be sued. NCS had the option to simply say we can't verify. And that would have been a safe harbor. We wouldn't even be here. But every single time, they chose to respond that they had, in fact, verified that it was correct when they did not. And so what happens to the data if they say we can't verify, then it goes off the credit report? In most situations, yes. But there's, you know, they're not required to report anything about anybody. It's a completely voluntary process. Now, they say that a consumer can simply go file a lawsuit and get a judgment that they're correct and that they don't know the money. But even then, there's a case pending in the District of Colorado where a consumer did exactly that, got a state court judgment that they didn't know. NCS still kept reporting it. And now they're saying reading the judge's order would not be objectively and readily verifiable. So if this, the problem is this standard would create no, identity theft victims would have no remedy then because they could never get this off their report. The FCRA preempts all state laws as it relates to furnishers. So you can't sue for defamation or negligence or anything. So if you don't have some recourse under the FCRA, there's no hope for these people. And there's so much identity theft, there has to be some remedy. I would also note that Congress never contemplated requiring a consumer to bring a lawsuit saying they're correct before they could file a dispute and have an FCRA case. Because it has a two year statute of limitations which isn't told while you would do that process. And so the only precondition for an S2B case is that you notify the credit bureau first and then that they notify the furnisher. I think their argument that the trial court didn't make a finding is a harmless error because the jury already found it at a higher standard. But to the extent that your honors believe that's an error, we would request that you remand to the district court to make such a finding and uphold the jury's verdict. Thank you. Thank you, Your Honor. Thank you, Counsel. Your time is expired. Mr. Bowditch, you may have a minute. Can you tell me in your opinion what Mr. Borden knew prior to trial about the credit application? Yes. As soon as the consumer, he disputed it directly with NCS. As soon as that happens under the FBCPA, you've got to then send the consumer your support, your verification for the debt. NCS did that. They sent him the entire what the lease packet was, which was the lease application and all the supporting documents. He had that application and all the supporting documents, the pay stubs and everything else, which is how he knew to talk about that information in his ID theft report. It would be impossible that he would have known about the Neiman Marcus pay stubs and everything else unless he had gotten those documents from NCS at the time he did his ID theft report. So to your point, absolutely he knew all that information, and that's why. The Neiman Marcus stubs were in that package? Yes. So he got the entire lease package, which is the lease application. It was the SS. Social Security letter? Mm-hmm. Did he have notice of the landlord's lawsuit? It indicates that he was personally served. That's the only thing. It's evident if you just read that form eviction judgment. It does say that the occupant was personally served, right? And he's listed as the occupant. He's listed as the occupant. Right. So it says personally served. But it was a default judgment. It was. I would love to address a few more of his points. I think you're out of time. I appreciate it. I appreciate it, Justices. Thank you. Thank you, Counsel. You're excused and the case is submitted.